## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHLEEN JOHNSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RUTTER'S, INC.<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

Plaintiff Kathleen Johnson ("Plaintiff"), on behalf of herself and all others similarly situated (the "Class"), brings this action against Defendant, Rutter's, Inc. ("Rutter's" or "Defendant") to obtain damages, restitution, and equitable relief. Plaintiff alleges the following based on personal knowledge as to her own acts and on the investigation conducted by counsel as to all other allegations:

### PARTIES

1.  Plaintiff Kathleen Johnson is a citizen and resident of Pennsylvania.

2.  Defendant Rutter's (f/k/a Rutter's Farm Stores Inc.) is a privately held Pennsylvania corporation with principal place of business located at 2100 North George Street, York, Pennsylvania 17404.

### JURISDICTION AND VENUE

3.  This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a Class action, (3) there are Class

members who are diverse from Defendant, and (4) there are more than 100 Class members. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the claims within the Court's original jurisdiction.

4. This Court has general personal jurisdiction over Defendant because Defendant's principal place of business is in Pennsylvania.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of Pennsylvania.

## SUMMARY OF THE CASE

6. This class action arises out of the data security breach (the "Breach") of Defendant's point-of-sale ("POS") devices from August 30, 2018 through May 29, 2019, during which time, unauthorized third parties were able to access minimum payment card numbers, expiration dates, security codes (card verification values, commonly referred to as "CVV" numbers), and customers' names (collectively, "Payment Card Data" or "PCD") of Defendant's customers, including Plaintiff and Class members.

7. Plaintiff and Class members are Defendant's customers who purchased goods and services from Defendant with their payment cards and with the reasonable expectation that their PCD would be safeguarded.

8. As a result of the Breach, many Class members have experienced and will continue to experience fraudulent credit or debit card purchases. Class members will also expend time and money to purchase protective measures such as credit monitoring services, credit freezes, and credit reports. They will also incur costs for replacement cards or other items directly or indirectly related to the Data Breach.

9. Plaintiff and Class members have been exposed to a heightened and imminent risk of fraud and identity theft. Class members must now and in the future closely monitor their financial accounts to guard against fraud. This is a burdensome and time-consuming process.

10. On or about February 13, 2020, Defendant sent a letter to Plaintiff, notifying her of the Breach, approximately one month after Defendant became aware of the Breach, and approximately 18 months after the Breach began.

11. As a result of Defendant's failure to follow legally prescribed, industry-standard security procedures, Plaintiff received only a diminished value of the services which Defendant provided. Plaintiff contracted for services that included a guarantee by Defendant to safeguard her PCD and, instead, Plaintiff received services devoid of these very important protections. Accordingly, Plaintiff alleges claims for consumer code violations, breach of contract, breach of implied contract, unjust enrichment, and negligence.

12. Plaintiff seeks to remedy these harms on behalf of herself and all similarly situated individuals whose PCD was stolen as a result of the Breach. Plaintiff seeks remedies including reimbursement of fraud losses and other out-of-pocket costs, compensation for time spent in response to the Breach, credit monitoring, identity theft insurance, and injunctive relief involving substantial improvements to Defendant's data security practices.

## FACTUAL ALLEGATIONS

### A. The Breach

13. Defendant operates approximately 72 convenience stores in Pennsylvania, West Virginia, and Maryland, many of which also have gas pumps.

3

14. On February 13, 2020, Defendant publicly announced the that its POS devices were infected with malware, permitting unauthorized users to access customers' PCD[1]:

> On January 14, 2020, the investigation identified evidence indicating that an unauthorized actor may have accessed payment card data from cards used on point-of-sale (POS) devices at some fuel pumps and inside some of our convenience stores through malware installed on the payment processing systems. The malware searched for track data (which sometimes has the cardholder name in addition to card number, expiration date, and internal verification code) read from a payment card as it was being routed through the payment processing systems. However, chip-enabled (EMV) POS terminals are used inside our convenience stores. EMV cards generate a unique code that is validated for each transaction, and the code cannot be reused. As a result, for EMV cards inserted into the chip-reader on the EMV POS devices in our convenience stores, only card number and expiration date (and not the cardholder name or internal verification code) were involved. In addition, it appears that the malware did not copy data from all of the payment cards used during the period that it was present on a given payment processing system. There is no indication that other customer information was accessed. Please note this incident is not the result of a handheld "skimmer" being placed on a Rutter's fuel pump.
>
> The specific timeframes when data from cards used at the locations involved may have been accessed vary by location over the general timeframe beginning October 1, 2018 through May 29, 2019. There is one location where access to card data may have started August 30, 2018 and nine additional locations where access to card data may have started as early as September 20, 2018. A list of the locations involved and specific timeframes is available here. For those customers Rutter's can identify as having used their card at a location involved during that location's specific timeframe and for whom Rutter's has a mailing address or email address, Rutter's will be mailing them a letter or sending them an email.

15. Defendant did not discover the Breach until approximately 18 months after it began and failed to notify affected customers until approximately one month after discovering the Breach.

---

[1] https://www.rutters.com/paymentcardincident/ (last visited March 9, 2020).

16. The Breach caused customers' names, card numbers, expiration dates, and internal verification codes to be compromised.

17. Defendant failed to properly safeguard Plaintiff and Class members' PCD, allowing unauthorized third parties to access PCD for months. Defendant also failed to properly monitor its systems. Had it properly monitored its card payment systems; it would have discovered the malware much sooner than nine months after the breach began.

**B. Defendant's Failure to Provide Adequate Relief to Customers**

18. Instead of providing actual relief to affected customers, Rutter's merely advised customers to monitor their financial accounts for fraudulent activity:

> It is always advisable to review your payment card statements for any unauthorized activity. You should immediately report any unauthorized charges to your card issuer because payment card rules generally provide that cardholders are not responsible for unauthorized charges reported in a timely manner. The phone number to call is usually on the back of your payment card. Please see the section below for information on additional steps you may take.[2]

19. Contrary to Defendant's poor advice, cybersecurity experts advise Rutter's customers to cancel and/or replace any potentially affected cards and to change any PINs and passwords immediately.[3]

20. Defendant also failed to provide any sort of relief to customers, such as credit monitoring or identity theft protection, that could alleviate some of the fraud that is likely to happen or that is already happening to Rutter's customers.

21. Defendant also did not guarantee that it will reimburse any fraudulent charges incurred by customers due to the Breach.

---

[2] *See* https://www.rutters.com/paymentcardincident/ (last visited March 9, 2020).
[3] *See* https://www.abc27.com/news/local/york/legislator-security-expert-weigh-in-on-rutters-data-breach/ (last visited March 9, 2020).

### C. Defendant's Failure to Protect PCD

22. Defendant expressly and impliedly warranted to customers by accepting payment cards that it would keep their PCD confidential and secure from unauthorized access.

23. Plaintiff and Class members provided their PCD to Defendant with the reasonable expectation that Defendant would comply with its obligations to keep their PCD confidential and secure from unauthorized access.

24. Defendant failed to adhere to its duties under common law, industry standards, and card network rules to keep customers' PCD confidential and to protect it from unauthorized access.

25. Defendant was on notice of the prevalence and risk of data security breaches, including the specific risks associated with the present Breach which involved malware loaded onto POS devices.

26. Defendant was on notice of this particular type of data security breach because of industry knowledge and publicly disclosed alerts.

27. Defendant failed to safeguard its POS devices from the Breach by failing to install chip readers which provide greater security.

28. Defendant failed to implement and maintain reasonable security procedures, employee supervision policies, device encryption policies, and practices appropriate to the nature and scope of the information compromised in the data breach.

29. Defendant breached its duties, obligations, and promises by not:

   a. Adequately safeguarding consumers' credit and debit PCD;

   b. Maintaining an adequate data security environment to reduce the risk of a data breach;

   c. Properly monitoring its data security systems for existing intrusions and weaknesses;

6

    d. Performing penetration tests to determine the strength of its credit card and debit card POS devices;

    e. Properly training its information technology staff on matters relevant to cardholder data security; and

    f. Retaining outside vendors to periodically test its credit card processing systems.

30. Defendant failed to follow payment card network rules and standards governing the basic protective measures that merchants including Defendant must take to ensure that payment PCD is properly safeguarded.

31. All major payment card networks require merchants to safeguard customer PCD according to industry standards. Payment Card Industry Data Security Standards ("PCI DSS"), which are uses by all major payment card networks, dictate how to safeguard PCD, including[4]:

    a. Protecting all systems against malware; and

    b. Tracking and monitoring all authorized and unauthorized access to all systems.

32. The FTC publishes data security guidelines that are applicable to all businesses, but especially businesses that accept personal information from consumers, such as PCD. The FTC guidelines recommend[5]:

    a. Controlling access to data;

    b. Storing sensitive information securely;

    c. Segmenting networks;

    d. Monitoring authorized and unauthorized access to all networks;

    e. Ensuring that third party contractors utilize good security measures;

    f. Keeping security protocols current; and

---

[4] *Payment Card Industry (PCI) Data Security Standard,* PCI Security Standards Council, May 2018, at p. 5, available at https://www.pcisecuritystandards.org/documents/PCI_DSS_v3-2-1.pdf?agreement=true&time=1577046042482.
[5] https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf; https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf

  g. Monitoring for and quickly addressing vulnerabilities.

  33. Defendant failed to comply with PCI DSS and FTC guidelines by permitting malware to be installed on its POS devices, by failing to monitor unauthorized access to its POS devices, and by failing to properly secure PCD, allowing PCD to be compromised and accessed by third parties.

  34. As a large chain retailer that has accepted payment cards for decades and processed millions of payment card transactions, Defendant was aware of PCI DSS and FTC guidelines and the necessity of protecting PCD.

**C.** **Damages to Class Members**

  35. Defendant has already acknowledged that Plaintiff and Class members face an unacceptable increased risk of identity theft and fraud because of the Breach.

  36. Plaintiff and Class members have been damaged by the compromise of their PCD in the Breach.

  37. Stolen PCD is a highly valued commodity among identity thieves who use the data to create fraudulent accounts, fraudulently transfer money, and make fraudulent purchases to the detriment of customers such as Plaintiff and Class members.[6]

  38. Stolen PCD is regularly sold on the "dark web" for use by identity thieves. Indeed, the Breach that Defendant failed to protect against is similar to many data security breaches that resulted in PCD being uploaded and sold on the dark web.

  39. Though Defendant reported that some customers' CVVs were not breached, that does not insulate those customers from fraud. A three-digit CVV code has only 999 possible

---

[6] *See* https://www.justice.gov/opa/speech/attorney-general-william-p-barr-announces-indictment-four-members-china-s-military (last visited March 9, 2020).

combinations, which may be easily discovered by a computer merely by repeated attempts.[7] Even if a customer's CVV was not compromised, there is little to stop a hacker from fraudulently using their PCD.

40.  Identity thieves can combine the stolen PCD with other information about Class members from other more easily obtainable sources, such as public records, which are now easier to identify because of their possession of the PCD. For example, finding a Class member' mailing address or email address in a public source, in combination with their PCD, would make it easier for an identity thief to open a new account or file a tax return in a Class member's name.

41.  Upon information and belief, misuse of Rutter's customer PCD has already begun, with many Class members experiencing fraudulent credit and debit card purchases due to the Breach.

42.  Class members suffered and will continue to suffer damages in the form of out-of-pocket costs for credit monitoring, credit reports, credit freezes, and replacement cards that were necessitated by the Breach and any actual or potential fraud stemming from it.

43.  Class members suffered and will continue to suffer damages from the loss of value from their stolen PCD. The value of Class members' stolen PCD can be ascertained by the illegal sale of stolen PCD on the "dark web."

44.  Class members suffered and will continue to suffer damages by overpaying for goods and services from Defendant with an expectation that their PCD would be safeguarded when it was not. Class members were deprived of the price premium paid for the expectation that their PCD would be safeguarded.

---

[7] *See* https://www.phillymag.com/news/2019/12/20/wawa-data-breach/ (last visited March 9, 2020).

45. Class members suffered and will continue to suffer damages by spending time and money monitoring their financial accounts, disputing fraudulent purchases, replacing payment cards, updating payment card data on automatic payment accounts, and monitoring their credit reports because of the Breach.

46. Class members suffered and will continue to suffer damages by the inability to use their credit or debit cards when their accounts are suspended due to the fraudulent charges, which could result in indirect damages such as late payments on other accounts or the inability to make necessary purchases.

47. Class members have and will continue to suffer damages as a result of the Breach for months or years as identity thieves continue to defraud Class members.

## CLASS ALLEGATIONS

48. Plaintiff, individually and on behalf of all others similarly situated, brings this class action pursuant to Fed. R. Civ. P. 23.

49. The Class is defined as follows:

> **Nationwide Class:** All persons in the United States whose credit or debit card numbers were compromised in the data breach announced by Rutter's on February 13, 2020.
>
> **Pennsylvania Subclass:** All residents of the Commonwealth of Pennsylvania whose credit or debit card numbers were compromised in the data breach announced by Rutter's on February 13, 2020.

50. The Class excludes the following: Defendant, its affiliates, and its current and former employees, officers and directors, and the Judge assigned to this case.

51. Plaintiff reserves the right to modify, change, or expand the definition of the Class based upon discovery and further investigation.

52. *Numerosity*: The Class is so numerous that joinder of all members is impracticable. There are thousands of Class members. The Class is ascertainable by records in Defendant's possession.

53. *Commonality*: Questions of law or fact common to the class include, without limitation:

   a. The nature and extent of the Breach;
   b. Whether Defendant's data security practices were adequate and in compliance with industry standards and FTC guidelines;
   c. Whether Defendant owed a duty to Plaintiff and Class members to safeguard their PCD;
   d. Whether Defendant breached its duty to Plaintiff and Class members to safeguard their PCD;
   e. Whether Defendant knew or should have known that its data security practices were inadequate and not in compliance with industry standards and FTC guidelines;
   f. Whether Defendant failed to timely notify customers of the Breach;
   g. Whether Defendant concealed the Breach;
   h. Whether Defendant engaged in unfair or deceptive trade practices;
   i. Whether Defendant breached a warranty;
   j. Whether Defendant engaged in fraud;
   k. Whether Defendant was unjustly enriched; and
   l. Whether Plaintiff and Class members are entitled to damages and/or restitution.

54. *Typicality*: The claims or defenses of Plaintiffs are typical of the claims or defenses of the Class members. Class members were injured and suffered damages in substantially the same manner as Plaintiff, Class members have the same claims against Defendant relating to the same course of conduct and the same Breach, and the Class members are entitled to relief under the same legal theories asserted by Plaintiff.

55.     *Adequacy*: Plaintiff will fairly and adequately protect the interests of the Class and has no interests antagonistic to those of the Class. Plaintiff has retained counsel experienced in the prosecution of complex class actions including, but not limited to, data security breaches, breaches of warranties, product liability, product design defects, and state consumer fraud statutes.

56.     *Predominance*: Questions of law or fact common to Class members predominate over any questions affecting only individual members. Common questions such as the extent, nature, causes, and consequences of the Breach, Defendant's knowledge and concealment of the Breach, and Defendant's liability predominate over individual questions such as measurement of economic damages.

57.     *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of this case because individual joinder of all members of the Class is impracticable and the amount at issue for each Class member would not justify the cost of litigating individual claims. Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

58.     *Manageability*: Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

59.     Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(3).

60. Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

61. Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(2).

## CAUSES OF ACTION

### COUNT I
### BREACH OF IMPLIED CONTRACT

62. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

63. By soliciting and offering to Plaintiff and Class members the opportunity to make payments with payment cards and by accepting payment cards, Defendant assured Plaintiff and Class members that it would safeguard their PCD in accordance with industry standards.

64. The use of payment cards and the implied assurances of Defendant to safeguard PCD became part of the basis of the bargain for the purchase goods and/or services from Defendant.

65. Defendant's assurance's to Plaintiff and Class members were material because they would likely cause a reasonable consumer to be deceived about the true value of the underlying transaction.

66. Defendant intentionally misrepresented and concealed its lack of adequate data security measures.

67. The use of payment cards and the implied assurances of Defendant to safeguard PCD became part of the basis of the bargain for the purchase goods and/or services from Defendant.

68. Plaintiff and Class members paid a premium price to be able to use their payment cards when making purchases at Defendant's stores with assurances that their PCD would be safeguarded.

69. Plaintiff and Class members would not have made their purchases from Defendant with payment cards had they known that Defendant would not comply with industry standard data security measures.

70. Plaintiff and Class members reasonably and justifiably relied on Defendant's implied assurances when making purchases using their payment cards.

71. Defendant breached the implied contract by failing to provide adequate data security measures and by permitting unauthorized third parties to access Plaintiff and Class members' PCD.

72. Plaintiff and Class members fully complied with the implied contract by paying money to Defendant.

73. Defendant's breach deprived Plaintiff and Class members of the benefit of the bargain.

74. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

## COUNT II
## NEGLIGENCE

75. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

76. By soliciting and offering to Plaintiff and Class members the opportunity to make payments with payment cards and by accepting payment cards, Defendant assured Plaintiff and Class members that it would safeguard their PCD in accordance with industry standards.

14

77. Defendant had a duty to safeguard any PCD that Plaintiff or Class members entrusted Defendant with because Defendant knew and understood that such information may be used to commit identity theft and fraud against Plaintiff and Class members if stolen.

78. Defendant's duty arose out of its relationship with Plaintiff and Class members as a merchant that accepts payment cards from customers.

79. Defendant had a duty to provide adequate data security measures in accordance with industry standards to protect Plaintiff and Class members' PCD.

80. Defendant had a duty to provide adequate data security measures under the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including failing to use reasonable measures to protect confidential consumer data.

81. Defendant breached its duties by failing to provide adequate data security measures and by permitting unauthorized third parties to access Plaintiff and Class members' PCD.

82. Defendant's breaches proximately caused Plaintiff and Class members' injuries.

83. Plaintiff and Class members' injuries were the foreseeable result of Defendant's breaches.

84. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

## COUNT III
## NEGLIGENCE PER SE

85. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

86. By soliciting and offering to Plaintiff and Class members the opportunity to make payments with payment cards and by accepting payment cards, Defendant assured Plaintiff and Class members that it would safeguard their PCD in accordance with industry standards.

15

87. Defendant had a duty to provide adequate data security measures under the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including failing to use reasonable measures to protect confidential consumer data.

88. Defendant violated 15 U.S.C. § 45 and therefore breached its duties by failing to provide adequate data security measures and by permitting unauthorized third parties to access Plaintiff and Class members' PCD.

89. Defendant's violations of 15 U.S.C. § 45 and violations of its duties proximately caused Plaintiff and Class members' injuries.

90. Plaintiff and Class members' injuries were the foreseeable result of Defendant's breaches.

91. Plaintiff and Class members' injuries are the type of harm that the FTC Act were intended to guard against.

92. Defendant's violations of 15 U.S.C. § 45 constitute negligence per se.

93. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

## COUNT IV
## UNJUST ENRICHMENT

94. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

95. By soliciting and offering to Plaintiff and Class members the opportunity to make payments with payment cards and by accepting payment cards, Defendant assured Plaintiff and Class members that it would safeguard their PCD in accordance with industry standards.

96. The use of payment cards and the implied assurances of Defendant to safeguard PCD became part of the basis of the bargain for the purchase goods and/or services from Defendant.

97. Plaintiff and Class members paid a premium price to be able to use their payment cards when making purchases at Defendant's stores with assurances that their PCD would be safeguarded.

98. Plaintiff and Class members would not have made their purchases from Defendant with payment cards had they known that Defendant would not comply with industry standard data security measures.

99. Plaintiff and Class members reasonably and justifiably relied on Defendant's implied assurances when making purchases using their payment cards.

100. Defendant failed to provide adequate data security measures and permitted unauthorized third parties to access Plaintiff and Class members' PCD.

101. Defendant's breach deprived Plaintiff and Class members of the benefit of the bargain.

102. Defendant willingly received and enjoyed a benefit conferred by Plaintiff and Class members without providing adequate data security measures.

103. It would be unjust for Defendant to retain such benefit.

104. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

## COUNT V
### VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT
### 73 Pa. Stat. §§ 201-1, *et seq.*

105. Plaintiff hereby incorporates by reference all preceding paragraphs as though fully set forth herein.

106. Plaintiff and Defendant are each a "person" as defined by 73 Pa. Stat. Ann. § 201-2(2).

107. Defendant's sale of goods and services to Plaintiff and Class members and the collection of PCD through those transactions are "trade" and "commerce" as defined by 73 Pa. Stat. Ann. § 201-2(3).

108. By soliciting and offering to Plaintiff and Class members the opportunity to make payments with payment cards and by accepting payment cards, Defendant assured Plaintiff and Class members that it would safeguard their PCD in accordance with industry standards.

109. Defendant's assurance's to Plaintiff and Class members were material because they would likely cause a reasonable consumer to be deceived about the true value of the underlying transaction.

110. Defendant intentionally misrepresented and concealed its lack of adequate data security measures.

111. The use of payment cards and the implied assurances of Defendant to safeguard PCD became part of the basis of the bargain for the purchase goods and/or services from Defendant.

112. Plaintiff and Class members paid a premium price to be able to use their payment cards when making purchases at Defendant's stores with assurances that their PCD would be safeguarded.

113. Plaintiff and Class members would not have made their purchases from Defendant with payment cards had they known that Defendant would not comply with industry standard data security measures.

114. Plaintiff and Class members reasonably and justifiably relied on Defendant's implied assurances when making purchases using their payment cards.

115. Defendant engaged in unfair and deceptive trade practices by failing to provide adequate data security measures and by permitting unauthorized third parties to access Plaintiff and Class members' PCD.

116. Defendant's unfair and deceptive trade practices violated 73 Pa. Stat. Ann. § 201-2(4) by:

   a. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

   b. Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

   c. Advertising goods or services with intent not to sell them as advertised;

   d. Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

117. Defendant's violations proximately caused Plaintiff and Class members' injuries.

118. Plaintiff and Class members' injuries were the foreseeable result of Defendant's breaches.

119. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been injured and sustained damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for a judgment against Defendant as follows:

    a. For an order certifying the Class, appointing Plaintiff as the Representative of the Class, and appointing the law firms representing Plaintiff as counsel for the Class;

    b. For injunctive relief requiring Defendant to establish and maintain adequate data security measures consistent with industry standards and FTC guidelines, submit to regular audits of such measures, and provide identity theft protection and credit monitoring services to Plaintiff and Class members.

    c. For compensatory damages, restitution, and/or refund of all funds acquired by Defendant from Plaintiff and Class members as a result of Defendant's unlawful, unfair, deceptive, and unconscionable practices described herein, including actual, statutory, punitive, and/or trebled damages to the extent permitted by law in an amount to be proven at trial;

    d. For punitive damages;

    e. Payment of costs and expenses of suit herein incurred;

    f. Both pre-and post-judgment interest on any amounts awarded;

    g. Payment of reasonable attorneys' fees and expert fees; and

    h. Such other and further relief as the Court may deem proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury.

Dated: March 31, 2020

*/s/ Charles E. Schaffer*
Charles E. Schaffer, Esquire
Frederick S. Longer, Esquire
LEVIN SEDRAN & BERMAN LLP
510 Walnut Street, Suite 500
Philadelphia, Pennsylvania 19106
T: (215) 592-1500
F: (215) 592-4663
cschaffer@lfsblaw.com
flonger@lfsblaw.com

Troy N. Giatras, Esquire (PA Bar # 77370)
(*pro hac vice* pending)
THE GIATRAS LAW FIRM, PLLC
118 Capitol Street, Suite 400
Charleston, West Virginia 25301
T: (304) 343-2900
F: (304) 343-2942
troy@thewvlawfirm.com